IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON

**SHEILA MAE NELSON**,

      **Plaintiff,**

**v.**                                                   **CASE NO. 3:09-cv-00863**

**MICHAEL J. ASTRUE**,
**Commissioner of Social Security**,

      **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff, Sheila Nelson (hereinafter referred to as "Claimant"), filed an application for SSI on January 9, 2007, alleging disability as of January 10, 2002, due to lower back problems and depression. (Tr. at 113-15, 125, 125.) The claim was denied initially and upon reconsideration. (Tr. at 56-60, 61-63.) On June 4, 2007, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 67.) The hearing was

held on August 21, 2008, before the Honorable Michelle D. Cavadi. (Tr. at 19-51.)  By decision dated January 22, 2009, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 10-18.)  The ALJ's decision became the final decision of the Commissioner on May 28, 2009, when the Appeals Council denied Claimant's request for review.  (Tr. at 1-4.)  On July 29, 2009, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 416.920 (2009).  If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 416.920(c).  If a severe

impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. § 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. § 416.920(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. § 416.920(f) (2009).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 12.)  Under the second inquiry, the ALJ found that Claimant suffers

from the severe impairments of status post L5 to S1 microdiskectomy in 2001 with residual low back strain, depression and anxiety. (Tr. at 12.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 12.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 14.) As a result, Claimant cannot return to her past relevant work. (Tr. at 17.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as office manager, unarmed night watchman, house sitter, surveillance system monitor, bench worker and grader/sorter, which exist in significant numbers in the national economy. (Tr. at 18.) On this basis, benefits were denied. (Tr. at 18.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was forty-five years old at the time of the administrative hearing. (Tr. at 23.) Claimant attained her GED and a home health aide certificate. (Pl.'s Br. at 2; Tr. at 26.) In the past, she worked as a cashier and as an in-home aide. (Tr. at 26-27.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

On July 11, 2006, Jose I. Ricard, M.D. completed a West Virginia Department of Health and Human Resources General Physical (Adults) form on which he noted Claimant's diagnoses including abdominal mass, COPD, L4/L5 pain, and varicose veins. (Tr. at 190.) He opined that Claimant was unable to perform full time work due to her low back pain. (Tr. at 190.)

The record includes treatment notes and other evidence from University Physicians & Surgeons, Inc. dated September 18, 2006, through January 23, 2007.  (Tr. at 193-200.)  On September 18, 2006, Claimant reported abdominal pain around the time of her period and mood swings.  Jason Hudak, M.D. diagnosed premenstrual syndrome, abdominal pain secondary to gas, allergic rhinitis and lipomas lower extremities, observe, stable.  (Tr. at 198.)  On October 31, 2006, Dr. Hudack examined Claimant for followup.  Dr. Hudack suspected irritable bowel syndrome and prescribed Bentyl.  He noted that Claimant was anxious.  He prescribed Zoloft.  Dr. Hudack noted that Claimant wanted to stop smoking and that she had allergic rhinitis and hyperlipidemia.  (Tr. at 195.)  On January 23, 2007, Claimant presented for followup.  Claimant reported that Bentyl helped her abdominal symptoms.  Claimant reported bilateral shoulder and right lower back pain over the last two weeks with tingling and numbness in her right toes.  Dr. Hudack noted that Claimant was status post back surgery.  He diagnosed allergic rhinitis, low back pain with muscle strain/sprain.  He prescribed Flexeril and Motrin.  In addition, he diagnosed depression and irritable bowel syndrome.  (Tr. at 193.)

On February 16, 2007, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant's mental impairments were not severe.  (Tr. at 201-14.)

On February 21, 2007, a State agency medical source completed

a Physical Residual Functional Capacity Assessment and opined that Claimant could perform medium work. (Tr. at 215-22.)

On May 2, 2007, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform light work, with occasional postural limitations, and a need to avoid concentrated exposure to extreme cold, vibration and hazards. (Tr. at 223-30.)

On May 3, 2007, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant's mental impairments were not severe. (Tr. at 231-43.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in his credibility findings; and (2) the ALJ erred at the final step of the sequential analysis. (Pl.'s Br. at 6-13.)

The Commissioner argues that (1) substantial evidence supports the ALJ's finding that Claimant could perform the light work identified by the vocational expert; (2) the ALJ properly evaluated Claimant's credibility; and (3) substantial evidence supports the ALJ's determination that suitable jobs exist in significant numbers. (Def.'s Br. at 9-14.)

Claimant first argues that the ALJ erred in failing to make a proper credibility finding. (Pl.'s Br. at 6.)

The court proposes that the presiding District Judge find that

the ALJ's pain and credibility findings are consistent with the applicable regulation, case law and social security ruling ("SSR") and are supported by substantial evidence.  20 C.F.R. § 416.929(b) (2009); SSR 96-7p, 1996 WL 374186 (July 2, 1996); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  In her decision, the ALJ found that Claimant's medically determinable impairments could reasonably cause the alleged symptoms.  (Tr. at 16.)  The ALJ's decision contains a thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain, precipitating and aggravating factors and Claimant's medication.  (Tr. at 14-16.)  The ALJ ultimately determined that Claimant's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible.  (Tr. at 16.)

Contrary to Claimant's assertions that the ALJ did not weigh the evidence of record supporting her testimony, the ALJ indicated that while Claimant alleged severe back, shoulder and leg pain, the medical evidence shows very minimal, conservative treatment for these conditions.  The ALJ extensively considered Claimant's subjective complaints, but concluded that they were not entirely credible.  The ALJ observed that Claimant "testified that nothing helps her pain.  However, she also stated that lying down with a heating pad does relieve her pain."  (Tr. at 16.)  The ALJ observed that Claimant "reported severe abdominal pain.  Yet, she did not

testify to having any abdominal pain. The claimant stated that she has severe anxiety and depression. However, the claimant has not received any counseling or therapy for a mental impairment and takes a minimal dosage of prescription medication (Exhibit 2F)." (Tr. at 16.) The ALJ also noted Claimant's daily activities including going outside each day, preparing simple meals, cleaning her house on a good day and going for a walk. (Tr. at 16.)

Claimant suggests that the ALJ drew negative inferences from her failure to obtain treatment. (Pl.'s Br. at 10.) Claimant testified at the administrative hearing that she did not undergo treatment because she had no insurance from 2005 through the time of the administrative hearing in 2008. (Tr. at 45-46.) Claimant eventually qualified for a medical card, as indicated on a Disability Report-Adult filed around the time of her application in 2007. (Tr. at 124.) Even then, the medical evidence of record does not suggest that Claimant required more than conservative treatment. That Claimant may not have been able to afford insurance from 2005 through the time she received a medical card does not undercut the ALJ's finding that Claimant's subjective symptoms were not entirely credible. The evidence of record developed after Claimant began receiving treatment from Dr. Hudak on a regular basis does not suggest the existence of disabling impairments. In addition, as explained by the ALJ in her decision, consideration of the remaining factors in the pain analysis also do

not support Claimant's complaints of disabling pain. The ALJ's findings regarding Claimant's subjective symptoms are in keeping with the above regulation and caselaw and supported by substantial evidence, and the court proposes that the presiding District Judge so find.

Next, Claimant argues that the ALJ erred at the final step of the sequential analysis in finding that Claimant could perform a significant number of jobs. Claimant asserts that the ALJ, in asking the vocational expert to name jobs "'that can be learned in one to two steps' appears to be confusing the education and preparation needed to learn a job with the actual job activities." (Pl.'s Br. at 11.) Claimant makes the vague argument that

> [w]hile the Vocational Expert may have made certain assumptions when naming the jobs she thought the claimant could do, these assumptions are only in the head of the ALJ and the Vocational Expert. When reviewing a decision, it is what is on paper that must be reviewed.
>
> While the Office Manager job was a clerical error, it was not discoverable until it was possible to review the transcript and in addition, [t]here was at least one other discrepancy with regard to the jobs as listed in the DOT and as the Vocational Expert testified that they could be learned in 'one or two steps.' The job of Night Guard, as listed in the DOT (372.667-034) has an SVP of 3 meaning that it is semi-skilled at least.
>
> Although the ALJ asked the Vocational Expert if her testimony was consistent with the DOT and the Vocational Expert responded that it was, clearly the Vocational Expert had missed this and it was not otherwise brought to her attention. The jobs to be learned in one or two steps might have referred to simple unskilled work, but it is not clear from the source.

(Pl.'s Br. at 11-12.)

10

Social Security Ruling ("SSR") 00-4p requires the ALJ to inquire of the vocational expert "about any possible conflict between [the vocational expert testimony] and information provided in the [Dictionary of Occupational Titles ("DOT")] and resolve any conflicts. SSR 00-4p, 2000 WL 1898704, *4 (Dec. 4, 2000). Specific Vocational Preparation ("SVP") "is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." U.S. Department of Labor, Dictionary of Occupational Titles, Appendix C (4th ed. 1991)

In keeping with SSR 00-4p, at the administrative hearing, the ALJ directed the vocational expert to inform her if any of the jobs identified conflicted with the DOT. (Tr. at 47.) The ALJ then posed a hypothetical, with modifications that included the following limitations: an ability to perform light work, with occasional climbing, balancing, stooping, kneeling, crouching; a need to avoid concentrated exposure to extreme cold, vibration or hazards; no repetitive reaching overhead; no driving an automobile; no repetitive pushing or pulling with the right lower extremity; and the jobs "must be learned in one or two steps." (Tr. at 48-49.) In response, the vocational expert identified the jobs of office messenger, house sitter, unarmed night watchman, surveillance system monitor, bench worker and grader/sorter. (Tr.

11

at 48-49.)

In her decision, the ALJ referred to the job of "office manager," rather than "office messenger." (Tr. at 18.) This error was acknowledged by Claimant, and was a harmless typographical error in the ALJ's decision. The only other job challenged by the Claimant, the job of unarmed night watchman, which Claimant identified in the DOT as the job of security guard, does have an SVP level of 3. U.S. Department of Labor, Dictionary of Occupational Titles, 372.667-034 (4th ed. 1991). An SVP of 3 is defined as "[o]ver 1 month up to and including months." Id.

Even if Claimant's assertion that there is an inconsistency between the ALJ's limitation of jobs which must be learned in one or two steps and the SVP level of 3 for the security guard position were true, the vocational expert identified other jobs with an SVP level of 2, requiring "[a]nything beyond short demonstration up to and including 1 month," including house sitter and surveillance system monitor. Id. at 309.367-010 (house sitter),379-367.010 (surveillance system monitor). The vocational expert testified that there were 7,000 surveillance system monitor jobs regionally and 830,000 nationally and 4,500 house sitter jobs regionally and 550,000 nationally. Thus, the court proposes that the presiding District Judge find that the ALJ's determination that Claimant could perform a significant number of jobs is supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Robert C. Chambers.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Chambers, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

July 29, 2010
Date

Mary E. Stanley
United States Magistrate Judge